UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMIE C. AUGUSTYN,                                    Case No. 12-13757

                Plaintiff,                     Avern Cohn
v.                                                   United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                     Michael Hluchaniuk
                                                     United States Magistrate Judge

                Defendant.
_____/

## REPORT AND RECOMMENDATION
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 11, 15)

## I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On August 24, 2012, plaintiff Amie C. Augustyn filed the instant suit

seeking judicial review of the Commissioner's unfavorable decision disallowing

benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule

72.1(b)(3), District Judge Avern Cohn referred this matter to the undersigned for

the purpose of reviewing the Commissioner's decision denying plaintiff's claim for

a period of disability and disability insurance benefits.  (Dkt. 3).  This matter is

before the Court on cross-motions for summary judgment.  (Dkt. 11, 15).

### B.    Administrative Proceedings

Plaintiff filed an application for a period of disability and disability

insurance benefits on December 21, 2009, alleging that she became disabled

1

beginning May 29, 2009.  (Dkt. 9-5, Pg ID 134-35).  The claim was initially

disapproved by the Commissioner on March 19, 2010.  (Dkt. 9-3, Pg ID 102).

Plaintiff requested a hearing and on June 28, 2011, plaintiff appeared with counsel

before Administrative Law Judge ("ALJ") Jacqueline Y. Hall-Keith, who

considered the case de novo.  (Dkt. 9-2, Pg ID 56-100).  In a decision dated July

25, 2011, the ALJ found that plaintiff was not disabled and that she could perform

other work that exists in significant numbers in the national economy.  (Dkt. 9-2,

Pg ID 42-52).  Plaintiff requested a review of this decision on August 2, 2011.

(Dkt. 9-2, Pg ID 37).  The ALJ's decision became the final decision of the

Commissioner when, after the review of additional exhibits,[1]  the Appeals Council,

on August 6, 2012, denied plaintiff's request for review.  (Dkt. 9-2, Pg ID 31-33);

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

    For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

summary judgment be **GRANTED**, and that the findings of the Commissioner be

---

    [1] In this circuit, where the Appeals Council considers additional evidence but denies a
request to review the ALJ's decision, since it has been held that the record is closed at the
administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not
part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th
Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since
district court review of the administrative record is limited to the ALJ's decision, which is the
final decision of the Commissioner, the court can consider only that evidence presented to the
ALJ. In other words, Appeals Council evidence may not be considered for the purpose of
substantial evidence review.

**AFFIRMED**.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was born in 1976 and was 33 years of age on the alleged disability onset date and 35 years old at the time of the administrative hearing.  (Dkt. 9-2, Pg ID 50, 60).  Plaintiff's past relevant work included work as a sales attendant and as a merchandise displayer.  (*Id.*; Dkt. 9-6, Pg ID 153-58).  The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (Dkt. 9-2, Pg ID 44).  At step two, the ALJ found that plaintiff's learning disability, depression and anxiety were "severe" within the meaning of the second sequential step.  (*Id.*).  At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meet or equal the severity of one of the listings in the regulations.  (Dkt. 9-2, Pg ID 44-46).

The ALJ concluded that plaintiff had no difficulties with communication and had the residual functional capacity to perform a full range of work at all exertional levels, but that she is limited to unskilled, simple one to two step tasks and she needs limited interaction with coworkers but is not restricted such that she would need constant supervision.  (Dkt. 9-2, Pg ID 46-50).  At step four, the ALJ found that plaintiff could not perform her past relevant work.  (Dkt. 9-2, Pg ID 50).  At

3

step five, the ALJ denied plaintiff benefits because she could perform a significant number of jobs available in the national economy.  (Dkt. 9-2, Pg ID 50-51).

### B.    Plaintiff's Claims of Error

Plaintiff argues that the ALJ failed to pose a complete and accurate hypothetical question to the vocational expert.  Plaintiff concedes that she is not alleging any physical impairments, but contends that her non-exertional limitations from a learning disability, depression, anxiety, concentrational issues and spatial issues prevent the satisfactory performance of work in a competitive work setting, including the occupations listed by the ALJ in her decision.  Plaintiff asserts that the ALJ found that she had moderate difficulties with concentration, persistence and pace (Tr. 15), and that the Mental Residual Functional Capacity Assessment (MRFCA) completed on March 19, 2010 showed that plaintiff had moderately limited ability to: maintain concentration for extended periods; sustain an ordinary routine without special supervision; interact appropriately with the general public; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and respond appropriately to changes in the work setting. (Tr. 610).  Plaintiff asserts that the ALJ's hypothetical question, limiting plaintiff to simple one to two step tasks with limited interaction with coworkers at a full range of work at all exertional levels fails to accommodate plaintiff's limitations, as required by 20 C.F.R. § 404.1520a(c)(2), and that the question should have been

more specific about plaintiff's concentrational limitations and should have
included the factors outlined in the MRFCA above.

Plaintiff states that a vocational expert's response to a flawed hypothetical
question cannot serve as substantial evidence under 42 U.S.C. § 405(g). *Donahue
v. Massanari*, 166 F. Supp.2d 1143, 1148 (E.D. Mich. 2001). For example, in
*Howard v. Commissioner of Social Security*, 276 F.3d 235 (6th Cir. 2002), the
court noted that the ALJ failed to include those portions of the mental status intake
report that cast the plaintiff is a less-than-capable light, and thus the ALJ's RFC
did not accurately describe plaintiff's abilities. *Id.* at 240-41. Thus, the court held
the VE's testimony based upon the inaccurate hypothetical question did not serve
as substantial evidence for the ALJ's conclusion that plaintiff could perform other
work. *Id.*; *see also Walker v. Barnhart*, 258 F. Supp.2d 693 (E.D. Mich. 2003)
(ALJ's hypothetical question limiting plaintiff to only simple, unskilled work did
not necessarily take into account the non-exertional limitations imposed by
plaintiff's depressive disorder); *Bonham-Conn v. Comm'r of Soc. Sec.*, 2009 WL
3211000 (E.D. Mich. Sept. 29, 2009) (generic limitations such a "unskilled work"
fail to account for "moderate" concentrational and pacing deficiencies).

Plaintiff argues that the ALJ failed to quantify the impact of the plaintiff's
limitations on her ability to maintain attention, concentration, persistence and pace,
despite a finding that plaintiff had moderate difficulties with concentration,

persistence and pace.  (Tr. 15).  Plaintiff contends that the moderate

concentrational problems would typically cause an employee to be off task more

than an acceptable period of time and would cause inability to maintain production

standards.  (Tr. 62).  *See Green v. Comm'r of Soc. Sec.*, 2009 WL 2365557, at *10

(E.D. Mich. July 28, 2009) ("It is difficult to reasonably accept 'moderate'

concentration problems meaning anything less than [drifting off-task] 20-30% of

the time at work").  Plaintiff asserts that the VE testified, in response to a different

hypothetical of very impaired range of speed using the left hand and arm and low

average for the right hand and arm, that all of the listed occupations required the

use of bilateral upper extremities and required the use of the upper extremities at a

rate in keeping with production expectations. (Tr. 64).  The VE testified that all

competitive work would be precluded if a hypothetical individual would be in a

depressed state and unable to leave her home at least two days per month.  (Tr. 68-

69).

Plaintiff also contends that the ALJ sought to discount plaintiff's credibility

in part due to her persistence in pursuing treatment (Tr. 20), which plaintiff claims

in "preposterous."  Plaintiff alleges that the ALJ failed to account for the

consistency of plaintiff's complaints and the ALJ's conclusion that persistent

treatment is indicative of ability to maintain focus and attention is flawed.  Plaintiff

concludes that the decision of the Commissioner is not supported by substantial

evidence, and that the final decision should be reversed and remanded for further assessment of plaintiff's mental limitations and abilities, her credibility, and additional vocational expert testimony in response to a hypothetical question that accurately describes plaintiff's abilities and limitations.

### C.   Commissioner's Motion for Summary Judgment

The Commissioner argues that while plaintiff asserts, generally, that the ALJ's decision was not supported by substantial evidence, her argument specifically finds fault with the ALJ's hypothetical to the vocational expert. Plaintiff asserts that the ALJ should have included, in her hypothetical to the vocational expert, the opinions of Dr. Edward Czarnecki, Ph.D., as reflected in his Mental RFC Assessment, that plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision, interact appropriately with the general public, and respond appropriately to changes in the work setting. Plaintiff also faults the ALJ for "failing to quantify the impact of [her] limitations on [her] ability to maintain attention, concentration, persistence and pace," citing authority in this jurisdiction addressing the effect of an ALJ's failure to account for limitations noted on the Psychiatric Review Technique Form. The Commissioner argues, however, that the ALJ adequately accounted for plaintiff's limitations in her hypothetical question to the vocational expert and in her findings as to plaintiff's

RFC, and plaintiff's claims are without merit.

The Commissioner asserts that in determining whether a claimant is able to perform his or her past relevant work or, if not, other work that exists in significant numbers in the national economy, the ALJ may receive expert testimony from a vocational expert in response to a hypothetical question, 20 C.F.R. §§ 404.1560(b)(2), 404.1566(e), and a vocational expert's testimony may serve as substantial evidence in support of the conclusion that a claimant can work where the hypothetical question accurately portrays the claimant's physical and mental impairments.  *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010).  The hypothetical question need not list each of the claimant's medical conditions, but must "take into account the claimant's functional limitations, i.e., what he or she 'can and cannot do.'"  *Infantado v. Astrue*, 263 Fed. Appx. 469, 476 (6th Cir. 2008) (quoting *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 632–33 (6th Cir. 2004)).

According to the Commissioner, the ALJ here inquired of the vocational expert as to the ability of a hypothetical individual to perform work at all exertional levels, where the work was unskilled, involved only simple, one- to two-step tasks, and required no more than limited interaction with co-workers.  (Tr. 62).  The Commissioner contends that the hypothetical question was based on the evidence of record, cited in the ALJ's decision, that plaintiff had difficulty with short-term

8

auditory memory and the ability to hold, process, and recall information.  (Tr. 19, 215).  And, in addition to incorporating the medical evidence establishing plaintiff's limitations, the Commissioner argues that the ALJ's hypothetical also took into account the evidence establishing what plaintiff could do.  Specifically, the hypothetical was based on the evidence that, despite plaintiff's limitations, neither Sarah Pouliot, M.A. (the examiner who completed an assessment of plaintiff at the Oakland University Counseling Center (OUCC)) nor Dr. Czarnecki ruled out work for plaintiff; indeed both noted that plaintiff had earned a bachelor's degree and worked for more than a decade with the same employer.  (Tr. 18–20, 211–12, 611).  As the ALJ noted, Ms. Pouliot identified the type of work environment and tasks to which plaintiff would be best suited, noting that plaintiff would perform best in a job that was "pragmatic, task-specific/goal[-] specific, and structured with clearly defined duties."  (Tr. 221–22).  And Dr. Czarnecki observed that plaintiff had worked for over twelve years with the complained-of conditions, which did not appear to be worsening, and opined that plaintiff had the ability to sustain an independent routine of simple tasks, adjust to simple changes in routine, and tolerate and respond appropriately to routine levels of co-worker and supervisor interaction.  (Tr. 611).

In addition, the ALJ's hypothetical was based on plaintiff's reports as to the activities in which she engaged: bowling, swimming, attending church for three

9

hours at a time, participating in a monthly Bible study group, babysitting for her niece for several hours at a time, attending social events with family and friends, reading, and driving short distances on her own.  (Tr. 16–17).  The hypothetical also incorporated the fact, noted by the ALJ, that multiple professionals had reported that plaintiff did not suffer from ADHD.  (Tr. 18–19).

Thus, the Commissioner concludes, the hypothetical question posed to the vocational expert, and relied upon by the ALJ in reaching her ultimate finding as to plaintiff's RFC, accurately described what plaintiff "can and cannot do."  *See Infantado*, 263 Fed. Appx. at 476.  And the limitation to unskilled simple work involving no more than two-step tasks is consistent with the ALJ's finding that plaintiff had moderate difficulty in maintaining concentration, persistence, or pace. *See* 20 C.F.R. § 404.1568(a) ("Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."); *see also Lewicki v. Comm'r of Soc. Sec.*, 2010 WL 3907049 at *9 (E.D. Mich. Aug. 23, 2010), *adopted by*, 2010 WL 3905375 (E.D. Mich. Sept. 30, 2010) ("a moderate impairment in concentration, persistence, and pace does not necessarily preclude simple, routine, unskilled work"); *McNamara v. Comm'r of Soc. Sec.*, 2011 WL 7025855 at *12 (E.D. Mich. Dec. 1, 2011), *adopted by*, 2012 WL 113541 (E.D. Mich. Jan. 13, 2012) ("a moderate limitation in concentration, pace, and persistence is encompassed in unskilled work").  According to the

10

Commissioner, as courts in this jurisdiction have held, "a particular assessment on a [Psychiatric Review Technique Form] does not mandate a rigid checklist of restrictions that must be included in this questioning." *Bohn-Morton v. Comm'r of Soc. Sec.*, 389 F. Supp.2d 804, 807 (E.D. Mich. 2005). "Rather, a case-by-case determination is required," under which the ALJ must translate the broad [Psychiatric Review Technique Form] classifications into a set of specific limitations that are properly rooted in the administrative record." *Id.* The Commissioner contends that the ALJ did so here.

The Commissioner continues that in arguing that the ALJ's hypothetical question failed to account for her limitations, plaintiff cites a number of cases from this jurisdiction involving a remand for a more detailed discussion of the claimant's limitations in concentration, persistence, or pace. However, plaintiff fails to cite the equally lengthy line of cases in which an ALJ, after finding a moderate limitation in maintaining concentration, persistence, or pace, did not expressly include that phrase in the hypothetical question or ultimate RFC finding and the Commissioner's decision was affirmed. In *Infantado*, the Sixth Circuit concluded that a hypothetical with a limitation to unskilled sedentary work "did not inaccurately portray" claimant's limitations, which included moderate limitation in the ability to maintain attention and concentration for extended periods. 263 Fed. Appx. at 477. And similar conclusions are consistently reached

11

in district court cases in this jurisdiction. *See, e.g.*, *Bohn-Morton*, 389 F. Supp.2d at 807 (finding that a limitation to "simple and rote type job tasks" and "unskilled" work adequately accounted for finding that claimant "often" had difficulties with concentration, persistence, or pace); *Lewicki*, 2010 WL 3905375, at *3 (E.D. Mich. 2010) ("There may be cases where such moderate limitations preclude the performance of even some simple, unskilled tasks. Plaintiff does not, however, explain why the facts of this particular case require a more detailed hypothetical question to adequately account for his own moderate limitations in concentration, persistence, or pace."); *McNamara*, 2011 WL 7025855 at *12 (finding that a hypothetical limiting claimant to "simple routine tasks consistent with unskilled work" adequately took into account claimant's mental limitations, including moderate limitation in concentration, persistence, or pace); *Young v. Comm'r of Soc. Sec.*, 2011 WL 2601014, at *10 (E.D. Mich. May 23, 2011) (finding that a hypothetical limiting claimant to routine and repetitive tasks accurately portrayed claimant's moderate limitation in ability to concentrate and perform at a consistent pace), *adopted by*, 2011 WL 2600599 (E.D. Mich. June 30 2011).

As was explained by the Court in *Cwik v. Commissioner of Social Security*, the cases "that do not remand for the ALJ to include a moderate concentration, persistence, or pace limitation were distinguishable because a medical professional had made a specific finding that the claimant had moderate difficulties in

concentration, persistence, or pace, but could still work on a sustained basis." 2012

WL 1033578, at *10 (E.D. Mich. Feb. 23, 2012), *adopted by*, 2012 WL 1033527

(E.D. Mich. Mar. 27, 2012) (citing *Hicks v. Comm'r of Soc. Sec.*, 2011 WL

6000714, at *4 (E.D. Mich. Aug. 30, 2011), *adopted by*, 2011 WL 6000701 (E.D.

Mich. Nov. 28, 2011)).  The Commissioner argues that here, as in *Infantado*,

*Lewicki*, and *Young*, the medical professional who reviewed the medical evidence

of record concluded that the moderate limitations that existed did not preclude

work.  That is, Dr. Czarnecki opined that plaintiff had moderate difficulties in

maintaining concentration, persistence, pace; understanding, remembering, and

carrying out detailed instructions; sustaining ordinary routine without special

supervision; interacting with and responding appropriately to the general public

and coworkers; and responding to changes in the work setting.  (Tr. 605, 609-610).

Yet Dr. Czarnecki went on to opine that, despite these limitations, plaintiff retained

the "mental capacity to sustain an independent routine of simple tasks," "tolerate

and respond adequately to routine levels of coworker and supervisor interaction"

and "adjust to simple changes in routine."  (Tr. 611).  So too did Ms. Pouliot, who

opined that plaintiff would be best suited to a job that was "pragmatic, task-

specific/goal[-]specific and structured with clearly defined duties."  (Tr. 222).

Thus, the Commissioner concludes, this case is distinguishable from the facts of

*Hicks*, *Cwik*, and the cases cited by plaintiff, where remand was required because

13

the ALJ found moderate limitations in concentration, persistence, or pace, but did not have the benefit of an opinion from a medical professional that, despite these limitations, the claimant could still work.  Here, the ALJ had such an opinion on which to rely and her hypothetical question and RFC finding were supported by substantial evidence and accounted for plaintiff's limitations.  Thus, plaintiff's first contention is without merit.

The Commissioner also argues that the ALJ did not err in assessing plaintiff's credibility.  Plaintiff points to a statement in the ALJ's decision that plaintiff's "persistence in pursuing treatment for her reported symptoms establishes her ability to maintain focus and concentration as she finds necessary."  Plaintiff also asserts that the ALJ "failed to account for the consistency of [her] complaints."  According to the Commissioner, a claimant's subjective complaints are relevant to the assessment of his or her RFC.  20 C.F.R. § 404.1545(a).  In assessing the credibility of a claimant's subjective complaints, the ALJ follows a two-step process. 20 C.F.R. § 404.1529; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); Social Security Ruling (SSR) 96-7p, 1996 WL 374186, at *1.  If the ALJ finds that a claimant has a medically determinable physical or mental impairment which could reasonably be expected to produce the symptoms alleged, then the ALJ  must determine the extent to which the claimant is accurately portraying his or her complaints.  *Rogers*, 486 F.3d at 247.  To make

this assessment, the ALJ must evaluate the entire case record, including medical signs and laboratory findings; the individual's own statements about his or her symptoms; and any statements and other information provided by treating or examining physicians, psychologists, and other persons about the individual's symptoms and how those symptoms affect the individual. *See* SSR 96-7p, 1996 WL 374186 at *2. The ALJ's analysis must include "specific reasons for the finding on credibility, supported by the evidence in the case record." *Id.* at *4.

The Commissioner argues that the ALJ here set out, at length, a narrative describing the entire case record, including plaintiff's assertions and descriptions of her conditions, before ultimately finding that her medically determinable impairments could reasonably be expected to cause the symptoms that she alleged. (Tr. 16–20). The ALJ went on to find that plaintiff's statements as to the intensity, persistence, and limiting effects of those symptoms were not entirely credible, citing specific reasons for that finding. (Tr. 20). According to the Commissioner, the ALJ explained that plaintiff's lengthy work history undermined the credibility of her assertion that her impairments, which she admitted had "always been there," were of disabling severity. (Tr. 20, 164). The ALJ also detailed the ways in which plaintiff's credibility as to the effects of her impairments was undermined by her conduct and statements during the evaluation process. The ALJ noted that, although plaintiff asserted that she lacked motivation and, as a result, struggled to

15

make it to work on time, Ms. Pouliot's report indicated that plaintiff was

consistently on time to her appointments. (Tr. 18, 214). Moreover, the ALJ noted

that despite testifying that she did not wish to pursue a graduate degree because she

was "tired of going to school" and "tired of pleasing [her] parents," plaintiff

indicated to Ms. Pouliot that she intended on pursuing a graduate degree and hoped

the assessment would provide her with academic accommodations for her studies.

(Tr. 17-18, 48, 210). The ALJ further noted that, although plaintiff testified that

she stopped taking her prescribed Adderall because she did not wish to take two

stimulants at the same time and was interested in "more natural things," Ms.

Pouliot's report suggested that plaintiff discontinued the medicine during the

assessment to increase the chance that the assessment would assist her in obtaining

academic accommodations for school. (Tr. 19-20, 210). The ALJ also noted Ms.

Pouliot's warning that, based on a discrepancy analysis and Ms. Pouliot's clinical

impression, plaintiff's full scale IQ score should be "interpreted with caution" and

"may not represent an accurate estimate of [plaintiff's] overall intellectual ability.

(Tr. 18, 215). The Commissioner argues that after reviewing the evidence and

observing plaintiff's demeanor at the hearing, the ALJ found that plaintiff was

"very methodical in presenting herself and pursuing a medical basis to establish

that she was an individual who suffered from disabling cognitive and

psychological impairments." (Tr. 18). Thus, the Commissioner concludes, the

ALJ gave specific reasons for concluding that plaintiff's allegations were only partially credible. And, because the evidence suggested that plaintiff was calculating in framing her complaints, behavior, and medical compliance in an effort to obtain academic accommodations and a favorable disability determination, the ALJ properly noted that she was persistent, focused, and concentrated in her pursuit of those goals.

The Commissioner further argues that, contrary to plaintiff's contention, the ALJ noted the instances in which plaintiff's statements were consistent with the medical evidence. Most notably, the ALJ found that the medically determinable impairments could reasonably be expected to cause the symptoms that plaintiff alleged. (Tr. 20). The ALJ also found that Ms. Pouliot's report that plaintiff struggled with short-term auditory memory and the ability to hold, process, and recall information was somewhat consistent with plaintiff's testimony. (Tr. 19). Because the ALJ properly assessed plaintiff's credibility in light of the entire record and gave specific reasons for her findings, the Commissioner contends that plaintiff's second claim is without merit. The Commissioner thus argues that the decision should be affirmed.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v.*

19

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

20

addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

**B.   Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20

C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

## C.      Analysis and Conclusions

### 1.      The ALJ's hypothetical question is supported by substantial evidence

In order for a VE's testimony to constitute substantial evidence that a significant number of jobs exists, "the [hypothetical] question[s] must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). A hypothetical question is not required to list all of plaintiff's medical conditions, but is only required to reflect her limitations. *See Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). Thus, "a hypothetical question need not incorporate a listing of the claimant's medical conditions, [so long as] the vocational expert's testimony . . . take[s] into account the claimant's functional limitations, i.e., what he or she 'can and cannot do.'" *Infantado v. Astrue*, 263 Fed. Appx. 469, 476 (6th Cir. 2008) (citation omitted).

The ALJ concluded that plaintiff has the residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has no difficulties with communication and has the residual functional capacity to perform a full range of work at all exertional levels but she is limited to unskilled, simple one to two step tasks and she needs limited interaction with coworkers but is not restricted such that she would need constant supervision.

24

(Dkt. 9-2, Pg ID 46).  At the administrative hearing, the ALJ posed a hypothetical question to the vocational expert that mirrored that RFC.  (Dkt. 9-2, Pg ID 92).  In response, the VE testified that given all these factors, a hypothetical individual would be able to perform the requirements of occupations such as dishwasher (5,000), laundry worker (3,000), packager (5,000), assembler (8,000), ticket taker/parking lot attendant (2,000), and sweeper/cleaner (1,000).  (Tr. 9-2, Pg ID 51, 92-93).  The ALJ relied on this testimony as substantial evidence supporting her conclusion that plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy, and that a finding of "not disabled" is therefore appropriate.  (Dkt. 9-2, Pg ID 51).

Plaintiff argues that the ALJ's hypothetical failed to account for the non-exertional limitations stated in Dr. Czarnecki's PRTF/Mental RFC assessment that plaintiff was moderately limited in the ability to: maintain attention and concentration for extended periods; sustain an ordinary routine without special supervision; interact appropriately with the general public; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and respond appropriately to changes in the work setting.  (Tr. 609-10).  Plaintiff relies on *Edwards v. Barnhart*, 383 F. Supp.2d 920 (E.D. Mich. 2005) in support of her argument.  The court in *Edwards* held that the ALJ's hypothetical, limiting plaintiff to "unskilled sedentary work," was not adequate to accommodate plaintiff's

moderate limitations of concentration, persistence, and pace because plaintiff may have been unable "to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job." *Id.* at 930. However, as the Commissioner properly argues, other courts in this district have disagreed with the *Edwards* court's holding. *See e.g.*, *McNamara*, 2011 WL 7025855, at *12 (collecting cases); *see also Schalk v. Comm'r of Soc. Sec.*, 2011 WL 4406824, at *11 n.6, 7 (E.D. Mich. Aug. 30, 2011) (distinguishing *Edwards* and discussing how "there is no brightline rule requiring remand whenever an ALJ's hypothetical includes a limitation of 'unskilled work' but excludes a moderate limitation in concentration. Rather, [the court] must look at the record as a whole and determine if substantial evidence supports the ALJ's RFC."), *adopted by* 2011 WL 4406332 (E.D. Mich. Sept. 22, 2011); *Lewicki v. Comm'r of Soc. Sec.*, 2010 WL 3905375, at *3 (E.D. Mich. Sept. 30, 2010) (distinguishing *Edwards* and holding that "[d]ecisions in this district reflect the conclusion that a moderate impairment in concentration, persistence, and pace does not necessarily preclude simple, routine, unskilled work"). Thus, "there is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of 'unskilled work' but excludes a moderate limitation in concentration. Rather, this Court must look at the record as a whole and determine if substantial evidence supports the ALJ's decision." *Taylor v. Comm'r of Soc. Sec.*, 2011 WL 2682682 at * 7 (E.D. Mich. May 17, 2011),

26

*adopted by* 2011 WL 2682892 (E.D. Mich. July 11, 2011).

"[N]umerous courts have found similar hypotheticals adequately account for moderate limitations in [concentration, persistence and pace]." *Johnson v. Comm'r of Soc. Sec.*, 2013 WL 1187031, at *5 (E.D. Mich. Mar. 21, 2013) (citing *Hess v. Comm'r of Soc. Sec.*, 2008 WL 2478325, at *7-8 (E.D. Mich. June 16, 2008) ("Simple routine tasks in a low stress environment" not incompatible with moderate limitations of concentration, persistence, or pace); *Latarte v. Comm'r of Soc. Sec.*, 2009 WL 1044836, at *3 (E.D. Mich. Apr. 20, 2009) ("Unskilled work, by definition, is limited to understanding, remembering and carrying out only simple instructions and requiring little, if any, judgment.")).  In *Hess* and *Taylor*, the courts both concluded that because the ALJ relied on the opinions in the PRTF to reach his conclusion that the plaintiff had moderate limitations in concentration, persistence, and pace, it was reasonable for the ALJ to also rely on the ultimate conclusion in the PRTF that the plaintiff could perform unskilled work on a sustained basis.  *See Taylor*, 2011 WL 2682682 at *7-8 (citing *Hess*, 2008 WL 2478325, at *8 ("Plaintiff's argument for the selective adoption of Dr. Marshall's 'moderate' limitations without considering the ultimate conclusion would amount to a distortion of the record."); *see also Ellis v. Comm'r of Soc. Sec.*, 2013 WL 1289270, at *8 (E.D. Mich. Feb. 13, 2013) (same), *adopted by* 2013 WL 1283484 (E.D. Mich. Mar. 28, 2013).

Here, Dr. Czarnecki's PRTF/MRFCA similarly concluded that plaintiff "retains the mental capacity to sustain an independent routine of simple tasks[,] can tolerate and respond adequately to routine levels of coworkers and supervisor interaction[, and] is able to adjust to simple changes in routine," despite her moderate difficulties in maintaining social functioning and maintaining concentration, persistence, or pace. (Dkt. 9-8, Pg ID 647). Thus, just as in *Taylor* and *Hess*, the ALJ reasonably relied on this ultimate opinion and there is no basis for the ALJ to have adopted or relied on only certain parts of the PRTF/MFRCA, while ignoring others. *See Hess*, 2008 WL 2478325 at *8 ("Plaintiff's argument for the selective adoption of Dr. Marshall's 'moderate' limitations without considering the ultimate conclusion [that plaintiff could perform unskilled work on a sustained basis] would amount to a distortion of the record."); *see also Lewicki*, 2010 WL 3905375 at *3 ("Plaintiff's objection ignores a particularly compelling piece of evidence provided by the same state psychologist who diagnosed Plaintiff's mental limitations in the first place. The psychologist diagnosed moderate mental impairments, but also concluded that Plaintiff's mental limitations would not prohibit him from performing simple, unskilled work."). Additionally, the ALJ did not simply limit plaintiff to "unskilled work," but rather accounted for plaintiff's specific limitations in the PRTF by also limiting plaintiff to "simple one to two step tasks" and "limited interaction with coworkers." (Dkt. 9-2, Pg ID 46).

*See Ellis*, 2013 WL 1289270, at *8 (finding that the ALJ reasonably accounted for plaintiff's moderate concentrational limitations in the PRTF by limiting her to "simple, unskilled light work" except that she should "avoid work requiring more than superficial contact with supervisors, coworkers, and the general public"). And, Ms. Pouliot also opined that plaintiff "will be best suited for a job that does not emphasize spatial organization and nonverbal skills but offers specialized training and is pragmatic, task-specific/goal[-]specific, and structured with clearly defined duties" (Tr. 221-22), lending further support to the ALJ's hypothetical.

Therefore, substantial evidence supports the hypothetical question posed to the VE, and plaintiff's claim of error should be denied.

### 2. The ALJ's credibility assessment is supported by substantial evidence

Plaintiff argues that the ALJ erred in assessing her credibility, in part, due to her persistence in pursuing treatment for her reported symptoms. Specifically, the ALJ stated, in relevant part:

> The claimant's credibility is severely undermined by her lengthy work history and the fact that the evidence suggests lifelong difficulties with primarily short-term memory but certainly not of disabling proportions. Furthermore, the claimant's persistence in pursuing treatment for her reported symptoms establishes her ability to maintain focus and concentration as she finds necessary. While the claimant undoubtedly has some cognitive and intellectual difficulties, this record does not support the severity, intensity and frequency of symptoms to establish total disability.

29

(Dkt. 9-2, Pg ID 50). Plaintiff contends that the ALJ's conclusion that persistent treatment is indicative of ability to maintain focus and attention is flawed, and that the ALJ failed to account for the consistency of her complaints.

Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). It is the ALJ's function to determine credibility issues, and the court does not make its own credibility determinations. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Further, the court cannot substitute its own credibility determination for the ALJ's. Rather, the court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed[.]" *Kuhn v. Comm'r of Soc. Sec.*, 124 Fed. Appx. 943, 945 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). In reviewing an ALJ's credibility determination, the Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [plaintiff] are reasonable and supported by substantial evidence in the record." *Id.* However, in reaching his credibility finding, "there is nothing patently erroneous in the ALJs decision to rely on h[is]

30

own reasonable assessment of the record over the claimant's personal testimony."
*White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009) (citing SSR 96-7p
as stating that ALJs may rely on "[s]tatements and reports from the individual and
from treating or examining physicians or psychologists and other persons about the
individual's medical history" to assess credibility).

   In this case, there is ample evidence supporting the ALJ's credibility
determination.  The ALJ thoroughly analyzed the record evidence, including
plaintiff's assertions and descriptions of her conditions, and properly noted
inconsistencies with plaintiff's testimony and the record evidence.  (Tr 16-20).
The ALJ's finding that plaintiff's persistence in pursuing treatment established her
ability to maintain focus when necessary is just one of the ALJ's credibility
findings.  The ALJ also noted that plaintiff's lengthy work history undermined her
credibility regarding her claim that her impairments were disabling. The ALJ also
noted that although plaintiff testified that she stopped taking Adderrall because she
was on two different stimulants, the Oakland University Counseling Center
(OUCC) report indicated that plaintiff stopped taking Adderrall for two months
specifically for the purpose of attenuating her reported ADHD symptoms for the
testing she was to undergo through OUCC, which the ALJ found suggests a
significant ability to focus and concentrate on her desire to obtain academic
accommodations for her anticipation of graduate studies.  (Tr. 18).  The ALJ

concluded that based on the OUCC report, it appears that plaintiff "was very methodical in presenting herself and pursuing a medical basis to establish that she was an individual who suffered from disabling cognitive and psychological impairments." (*Id.*). The ALJ noted that the OUCC report indicates that plaintiff was "aspiring to change careers" and was hoping to "matriculate into a graduate program with mental health counseling that would allow her to specialize in working with individuals with learning disabilities," which the ALJ found to be contrary to plaintiff's testimony that she did not desire to pursue a graduate degree. (Tr. 18, 209-22). The ALJ further noted that "contrary to [plaintiff's] suggestion that she lacked motivation and often arrived to work just within allowable limits, the report indicated that she consistently arrived on time to her appointments with OUCC." (*Id.*). Finally, the ALJ also noted in her decision plaintiff's reports as to the activities in which she engaged: bowling, swimming, attending church weekly for about three hours, attending a monthly Bible study group and social events such as family gatherings and weddings, driving short trips, and babysitting her niece for a couple of hours at a time. (Tr. 16-17). Therefore, the ALJ gave specific reasons for concluding that plaintiff's allegations of disabling limitations were only partially credible. "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant," *Rogers*, 486 F.3d at 247, and "[d]iscounting credibility to a certain degree is appropriate when

an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531.

Accordingly, the ALJ properly applied the proper standard in evaluating plaintiff's subjective complaints of alleged disabling symptoms. The ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing a claimant's demeanor and credibility. *Walters*, 127 F.3d. at 531. The ALJ conducted a thorough evaluation of plaintiff's complaints in light of the objective medical evidence of record, her reported daily activities, and other pertinent factors. Substantial evidence supports the ALJ's determination based on the medical and other evidence of record that plaintiff is not disabled. After review of the record, the undersigned concludes that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, and the decision is supported by substantial evidence.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: August 19, 2013              s/Michael Hluchaniuk
                                   Michael Hluchaniuk
                                   United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on August 19, 2013, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to the following: Kenneth F. Laritz, Vanessa Miree Mays, AUSA, and
Ameenah Lewis, Social Security Administration.

                                   s/Tammy Hallwood
                                   Case Manager
                                   (810) 341-7887
                                   tammy_hallwood@mied.uscourts.gov